UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JAIME RIVERA,

        Petitioner,

v.

                                Civil No. 4:22cv105
                                Criminal No. 4:20cr39

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on Jaime Rivera's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 142. Petitioner's motion, filed with the assistance of counsel, asserts that Petitioner's former lawyer (James Broccoletti) was constitutionally deficient for failing to discuss with Petitioner the potential for a reduced sentence under the statutory and Guideline "safety valve." On May 22, 2024, this Court ordered an evidentiary hearing to develop the relevant facts, ECF No. 163, and the hearing was conducted on August 7, 2024. With the benefit of the live testimony from the evidentiary hearing, and for the reasons explained below, Petitioner's § 2255 motion is **DENIED**.

### I. FACTUAL BACKGROUND

In October of 2020, a grand jury returned a single-count superseding indictment charging Petitioner and four codefendants with a drug trafficking conspiracy involving large quantities of

cocaine and heroin.  ECF No. 37.  On March 18, 2021, Petitioner entered a plea of guilty to the drug trafficking conspiracy.  ECF No. 94.  Due to the quantity of drugs, and pursuant to the terms of a written plea agreement, Petitioner faced a statutory mandatory minimum term of 10 years' imprisonment.  ECF No. 82, at 1.

At sentencing, Petitioner's Guideline base offense level was calculated based on the quantity of drugs attributed to him, and he received a 4-level enhancement for being an organizer or leader and a 3-level credit for acceptance of responsibility.  ECF No. 112 ¶¶ 30-39.  Petitioner was not attributed with any criminal history points, and his resulting advisory Guideline range was 120-135 months imprisonment.[1]  Id. ¶¶ 43-44, 83.  Petitioner's counsel filed a position paper advancing no objections to the Guideline calculation and requesting a sentence of 120 months' imprisonment.  ECF No. 114.  At the conclusion of the sentencing hearing, Petitioner was sentenced to the minimum term of imprisonment authorized by law: 120 months.  ECF No. 130, at 2.

Petitioner timely filed his § 2255 motion alleging that Mr. Broccoletti was constitutionally deficient because he only informed Petitioner about the possibility of reducing his sentence through "cooperation" and never explained the potential for a reduced sentence under the "safety valve" if he provided the

---

[1] The low-end of Petitioner's Guideline range would have been 108 months, but it was restricted by the 10-year statutory mandatory minimum.

Government "complete and truthful information." ECF No. 142, at 2. Petitioner asserts that had defense counsel described the contours and benefits of the safety valve, he would have taken all steps necessary to pursue and qualify for safety valve relief.[2] Id. at 2-3.

The Government filed a brief opposing Petitioner's § 2255 motion, as supported by Mr. Broccoletti's affidavit, ECF Nos. 154,[3] 158, and Petitioner filed a reply brief, ECF No. 161. Thereafter, the § 2255 case was reassigned to the undersigned judge and the evidentiary hearing was conducted. ECF Nos. 162, 167.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge their conviction or sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner must prove the asserted grounds for relief "by a preponderance of the

---

[2] Had Petitioner qualified for the safety valve, his Guideline range would have been significantly reduced and the Court would have been required to sentence him "without regard" to the 10-year statutory mandatory minimum. 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a).

[3] Mr. Broccoletti provided an affidavit only after being ordered to do so based on the Court's finding that Petitioner had waived the attorney-client privilege as to matters directly relevant to the allegations in his § 2255 motion. ECF No. 153.

evidence." Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  Applying the Sixth Amendment, the Supreme Court has held that the right to counsel is the right to "effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To obtain relief based on an allegation of ineffective assistance, a petitioner must normally establish that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the petitioner.  Id. at 687-88.

With respect to performance, the Constitution does not guarantee errorless representation; rather, deficient performance requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687.  Reviewing courts strongly presume that counsel exercised reasonable professional judgment. Id. at 689.  So only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).  As "it is all too easy" to challenge an act, omission, or strategy

after it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight" by "evaluat[ing] the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Ultimately, the "basic lesson" of Strickland is not just deference but high deference, and attorneys "can be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014).

Considering Strickland's prejudice prong, a petitioner must "affirmatively prove" that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove either prong of the Strickland test, then the Court need not evaluate the other prong. Moore v. Harde, 723 F.3d 488, 500 (4th Cir. 2013).

### III. DISCUSSION

### A. Safety Valve Background

A defendant convicted of a drug trafficking crime is able to benefit from the statutory and Guideline "safety valve" if five requirements are met: (1) the defendant has a limited criminal history; (2) the offense did not involve violence or firearms; (3) the offense did not result in death or serious bodily injury;

5

(4) the defendant did not have a leadership role; and (5) not later than sentencing, the defendant provides the Government with all the information he has about the offense.  18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.  The first four requirements ensure that only low-level, non-violent, and non-recidivist offenders receive the benefit, whereas the last factor ensures that the defendant takes affirmative steps to assist the Government in its investigation. See <u>United States v. Arrington</u>, 73 F.3d 144, 147 (7th Cir. 1996) ("Essentially, § 3553(f) directs that statutory minima shall not apply to first-time, non-violent drug offenders who were not organizers of criminal activity and who have made <u>a good-faith effort to cooperate with the government</u>.") (emphasis added).

Although safety-valve defendants are not penalized if they lack "valuable" information to share with the Government, the are required to provide the Government whatever relevant information they may have.  See <u>United States v. Acosta-Olivas</u>, 71 F.3d 375, 378-79 (10th Cir. 1995) (identifying the safety valve standard as a "tell all that you can tell requirement" (quoting Vincent L. Broderick, <u>Flexible Sentencing and the Violent Crime Control Act of 1994</u>, 7 Fed. Sentencing Rep. 128, 129 (1994))).  Indeed, as characterized by the Fourth Circuit, "[§] 3553(f)(5) requires broad disclosure from the defendant; it is a tell-all provision that requires the defendant to truthfully supply details of his own culpability."  <u>United States v. Aidoo</u>, 670 F.3d 600, 609 (4th

Cir. 2012) (quotation marks omitted).   Furthermore, the safety-valve cooperation provision "requires more than accepting responsibility for one's own acts; rather, satisfaction of § 3553(f)(5) requires a defendant to disclose all he knows concerning both his involvement and <u>that of any co-conspirators</u>." <u>United States v. Ivester</u>, 75 F.3d 182, 184 (4th Cir. 1996) (emphasis added).

### B. Substantial Assistance Background

Separate from the statutory safety valve, 18 U.S.C. § 3553(e) provides the Court with the authority to sentence a defendant below the statutory mandatory minimum if: (1) the defendant provides "substantial assistance in the investigation or prosecution of another person who has committed an offense"; and (2) <u>the Government</u> files a sentence reduction motion based on the defendant's assistance.   The § 3553(e) "substantial assistance" cooperation provision is both broader and narrower than the § 3553(f) safety valve.   It is broader because it can apply to violent recidivist drug traffickers, and it is narrower because a defendant must provide valuable information that actually assists in the Government's prosecution of others.

### C. Safety Valve and Substantial Assistance Compared

#### 1. Safety Valve Fills a Void in the Law

Congress codified the § 3553(f) safety valve in 1994 to fill a gap in federal sentencing law because, prior to its passage,

7

first time drug offenders were at times worse off than more
seasoned repeat traffickers.  United States v. Salazar, 61 F.4th
723, 727 (9th Cir. 2023).  Because minimally involved drug
offenders typically lack valuable information to share with the
Government, these low-level offenders were left saddled with
compulsory terms of incarceration whereas far more culpable
conspirators higher up the organizational chain reaped the
benefits of § 3553(e).  See United States v. Shrestha, 86 F.3d
935, 938 (9th Cir. 1996) (citing H.R. Rep. No. 103-460, 103d Cong.,
2d Sess. (1994)).  The passage of the safety valve changed this
dynamic:

> "Congress enacted § 3553(f) to rectify an inequity in
> the drug sentencing system, whereby more culpable
> defendants who could provide the Government with new or
> useful information about drug sources fared better than
> lower-level offenders, such as drug couriers or 'mules,'
> who typically have less knowledge." Shrestha, 86 F.3d
> at 938.  The safety valve "remedies this situation by
> requiring the sentencing court to disregard the
> statutory minimum in sentencing nonviolent drug
> offenders who played a minor role in the offense and who
> 'have made a good-faith effort to cooperate with the
> government.'" Id. (quoting United States v. Arrington,
> 73 F.3d 144, 147 (7th Cir. 1996)).

Salazar, 61 F.4th at 727 (cleaned up).  This history suggests that
the safety valve was not enacted to create a form of "cooperation-
lite," or "secret cooperation," but instead to ensure that certain
low-level drug offenders willing to cooperate with the Government
are rewarded for their cooperation even if it bears no fruit.  See
Arrington, 73 F.3d at 148 ("Section 3553(f) was intended to benefit

8

defendants who wished to cooperate with the government (and in fact did everything they could to cooperate) but simply had no new or useful information to provide.").

## 2. Scope of the term "Cooperation"

Petitioner's ineffective assistance claim relies on his assertion that a § 3553(e) "substantial assistance" reduction requires what he labels as "cooperation" with the Government, whereas a § 3553(f) safety valve reduction requires a lesser version of assistance that is somehow distinct from the concept of "cooperation." ECF No. 142, at 5, 11-14. Focusing on the claimed dichotomy between "cooperating" and providing fulsome "truthful information," the defense suggests that traditional substantial assistance cooperation mandates that a defendant participate in debriefs/proffer sessions with the Government (hereinafter "debriefs") followed by live testimony at a later proceeding. In contrast, the defense posits that providing the Government with safety valve "truthful information" does not require "cooperation" or even a debrief, but can be achieved through writing a letter to the Government, or by meeting with the Government in a judge's chambers to share information in a purportedly protected environment. ECF No. 142, at 5, 11; ECF No. 142-1, at 2.

Based on this Court's experience, it is the routine practice of substantial assistance cooperators to participate in one or more debriefs. However, nothing in the substantial assistance

statute states that a debrief is mandatory. Relatedly, while written "cooperation agreements" routinely require a defendant to promise to testify truthfully at future proceedings, such live testimony is also not mandated by statute. In fact, this Court routinely grants substantial assistance sentence reduction motions in cases where a defendant's cooperation led to a codefendant pleading guilty without the need for live testimony.

Similar to substantial assistance cooperators, it is this Court's experience that safety valve cooperators in this district often participate in a debrief, though nothing in the safety-valve statute requires it. The routine reliance on debriefs is unsurprising because safety-valve defendants have the burden to convince the Court that they have truthfully provided all relevant information to the Government. See United States v. Martinez, 9 F.4th 24, 37 (1st Cir. 2021) ("Full disclosure is the price that Congress has attached to relief under the safety-valve statute.") (cleaned up). Accordingly, a defendant seeking to provide safety valve cooperation by letter who refuses to be debriefed "runs an obvious and profound risk: The government is perfectly free to point out the suspicious omissions at sentencing, and the district court is entitled to make a common sense judgment" about the fullness of the defendant's disclosure. United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996); see United States v. Beltran-Ortiz, 91 F.3d 665, 669 (4th Cir. 1996) ("Debriefing by the

Government plays an important role in permitting a defendant to comply with the disclosure requirement of the safety valve provision and in convincing the Government of the fullness and completeness of a defendant's disclosure, thereby encouraging a favorable recommendation.").[4]

To be clear, although the Court highlights key similarities between the first step of the "cooperation" process under both statutory schemes, the Court fully accepts Petitioner's contention that a proffer session is not mandated for safety valve cooperators. The Court further accepts Petitioner's related contention that something less than traditional "cooperation" will often satisfy the safety valve (for example, a safety valve cooperator does not have to accede to the Government's demands to enter a written cooperation agreement and/or preemptively promise to testify at later hearings). Though differences exist, Petitioner's effort to establish a stark distinction between the concept of "traditional cooperation" and "safety-valve cooperation" are largely unsuccessful for the reasons outlined below.

First, to the extent Petitioner relies on semantics seeking to strictly categorize "cooperation" as a term of art that equates

---

[4] The safety valve statute requires that the Court provide the Government "an opportunity to make a recommendation" regarding a defendant's safety valve eligibility.  18 U.S.C. § 3553(f).  To risk stating the obvious, the more willing a defendant is to participate in a debrief, the more likely that defendant will secure a positive recommendation.

with providing substantial assistance, such position is dubious because: (1) the term "cooperation" does <u>not</u> appear in the substantial assistance statute; (2) telling federal investigators everything about your unlawful activities, including <u>naming all others involved</u> and describing their illegal conduct falls well-within the ordinary meaning of the term "cooperation"; and (3) consistent with this ordinary meaning, multiple federal courts, including judges of this Court, have labeled the safety-value duty as requiring good faith efforts "<u>to cooperate</u> with the government," <u>Martinez v. United States</u>, No. 2:13cr122, 2021 WL 5139496, at *5 (E.D. Va. Nov. 3, 2021) (emphasis added) (quoting <u>Arrington</u>, 73 F.3d at 147).[5]

Second, Defendant fails to effectively illustrate a material difference between a "debrief" with the Government (which he at least suggests is a substantial assistance requirement) and a "protected" meeting with the Government in a judge's chambers (which he suggests would satisfy the safety valve). In either scenario, the defendant would be obligated to "name names" and respond to the Government's questions about his co-conspirators

---

[5] In fact, earlier this year, the United States Supreme Court described the fifth safety valve requirement using the same word, indicating that it "addresses the defendant's cooperation with the Government." <u>Pulsifer v. United States</u>, 601 U.S. 124, 128 (2024).

illegal acts, which for all intents and purposes, would subject that defendant to being labeled a "snitch."[6]

Third, Petitioner fails to establish how a safety-valve cooperator is somehow safe or "protected" whereas a traditional cooperator faces risks of violent retaliation after he assists the Government. As effectively argued by counsel for the Government at the close of the evidentiary hearing, once a defendant agrees to "tell all" to the Government (whether in chambers or elsewhere), the defendant has no real control over whether his identity will remain secret, and the Government can seek to compel that defendant to testify at a future public hearing.[7] The Court assumes without deciding that safety-valve cooperators face risk of retribution less frequently than substantial assistance cooperators. However, Petitioner fails to demonstrate that Mr. Broccoletti incompetently overlooked some form of "protected" avenue for Petitioner to "name names" of drug suppliers in both Puerto Rico and Virginia that would eliminate the risk of reprisal.

---

[6] The term "snitch" is not used to evince any negative connotation, but rather, is based on the case-specific record. At the evidentiary hearing, Mr. Broccoletti credibly testified that Petitioner was adamant that he would not act as a "snitch." See also ECF No. 154 ¶ 7 (indicating that Petitioner told Mr. Broccoletti that it "went against his principals [sic] to be a 'snitch'").

[7] Alternatively, a safety-valve dispute could arise at sentencing regarding whether a defendant truly "told all" he knew, which could lead to details of the cooperation being discussed in open court, and would at a minimum expose the defendant as someone willing to "name names."

## D. Analysis of Counsel's performance

The above background is necessary to fairly evaluate the effectiveness of Mr. Broccoletti's representation without reliance on the "distorting effects of hindsight." Strickland, 466 U.S. at 689. Here, Petitioner faced two obstacles to securing the benefits of the safety valve: (1) he needed to "truthfully provide[] to the Government all information and evidence" that he had concerning the drug trafficking conspiracy, 18 U.S.C. § 3553(f)(5), including "naming names" of drug suppliers; and (2) he needed to demonstrate that, contrary to the Guideline calculation set forth in his Presentence Investigation Report, he was not "an organizer, leader, manager, or supervisor of others in the offense," 18 U.S.C. § 3553(f)(4). To succeed on his § 2255 motion, Petitioner must demonstrate that his lawyer committed constitutional errors as to both of these issues because he could not qualify for the safety valve if either obstacle remained in place.

### 1. "Cooperation" Testimony

On August 7, 2024, Petitioner, Mr. Broccoletti, and one of Petitioner's codefendants (Lee Spears) testified at the evidentiary hearing. Petitioner and Mr. Broccoletti both testified in detail about discussions they had prior to sentencing regarding the potential to secure a sentence below the 10-year statutory mandatory minimum. Their testimony revealed agreement on many key points, including: (1) Mr. Broccoletti never used the

14

term "safety valve" during their discussions; (2) Petitioner's brother had received a target letter from the Government indicating that he was being investigated by federal authorities; (3) prior to sentencing, Mr. Broccoletti told Petitioner that Government agents wanted to talk with him about the drug conspiracy; (4) Mr. Broccoletti told Petitioner that if he "cooperated" he would have a chance to reduce his sentence; (5) Petitioner did not want to provide any information to the Government in any way because he believed that he was being treated unfairly by the Government and he did not want others to suffer what he was suffering; (6) Petitioner rejected Mr. Broccoletti's suggestions that he "cooperate" with the Government and Mr. Broccoletti informed the Government that Petitioner would not meet with them; (7) Petitioner told Mr. Broccoletti that it went against his principles to be a "snitch"; and (8) when the issue was brought up again by Mr. Broccoletti, Petitioner stated that he was not a "snitch" and if the way to a sentence reduction was cooperation, he would rather just do his 10 years.

On several related points, the testimony of Petitioner and Mr. Broccoletti conflicted. According to Petitioner's testimony, the reason he rejected the offer to cooperate with the Government was because he understood "cooperation" to mean that he would have to testify against others about their drug activities and he was afraid that doing so would put his family's safety at risk. That

is, Petitioner testified that Mr. Broccoletti stated that "cooperation" meant that he would have to take the stand, and he did not want to do that. According to Petitioner, Mr. Broccoletti never informed him that there was a path to assisting the Government that may not involve testifying. Petitioner argues that he would have been willing to provide the Government with all the information he had about the drug conspiracy as long as he was able to do so in a "protected" environment, such as through a sealed (or unsealed) written statement or a meeting in a judge's chambers.

In contrast, Mr. Broccoletti testified that when he talked with Petitioner about meeting with the Government for a debrief, Petitioner indicated that he was: (1) worried about the Government's investigation into his brother; (2) angry at the Government and the AUSA in charge of the case to such a degree that he did not want to assist them on any terms; (3) staunchly opposed to providing information that could assist the Government's prosecution of anyone else; and (4) willing to "man up" and do his 10 years rather than go against his principles and act as a "snitch." Mr. Broccoletti clarified that when he broached the subject of speaking with the Government, Petitioner's response was "emphatically no," and Petitioner would not even entertain the idea of sitting down with the AUSA in charge of the case. Mr. Broccoletti confirmed that Petitioner voiced concerns about

whether cooperating would pose a risk to his family's safety, but credibly testified that Petitioner's anger with the Government made the idea of assisting with the criminal investigation in any format a non-starter.[8]   Finally, in conflict with Petitioner's testimony, Mr. Broccoletti testified that he never equated the term "cooperation" with the need to testify in open court, and in fact expressly explained to Petitioner that choosing to cooperate with the Government may or may not mean that he would have to testify at a future proceeding.

## 2. Cooperation Analysis

The Court found much of the testimony offered by both witnesses to be credible, but in the areas of direct conflict, the Court formed a firm conclusion that Mr. Broccoletti's version of events was more credible.[9]   In reaching this conclusion, the Court

---

[8] The Court need not resolve the dispute over the degree to which Petitioner was concerned about the risks posed by his brother's target letter (Petitioner testified that it was a non-issue because he knew that his brother was not involved, whereas Mr. Broccoletti testified that it was a significant issue because he did not know the nature of the investigation — which was from another jurisdiction — and could not assure Petitioner that the Government would not seek to elicit information detrimental to his brother).   The evidentiary record reveals that, irrespective of the level of concern over the target letter, Mr. Broccoletti's course of conduct was appropriately driven by Petitioner's clear statements that he did not want to assist the Government on any terms, both because he was angry about the Government's decision to prosecute him and because he did not want anyone else to suffer what he was suffering.

[9] At the evidentiary hearing, Petitioner admitted that he was not entirely truthful with the judge that accepted his guilty plea.   However, based on the testimony as a whole, this admission is far less consequential to the Court's findings than Mr. Broccoletti's credible testimony documenting Petitioner's anger at the Government and his self-sacrificing decision to simply serve his 10 years rather than act as a "snitch" for the Government.

suspects that Petitioner's hindsight recollection of his past motivations are (understandably) colored by his time spent in federal prison.  In resolving the testimonial conflicts, the Court accepts as credible Mr. Broccoletti's testimony that he explained to Petitioner that the "cooperation" he was proposing did not mean that Petitioner would necessarily have to testify against anyone. Petitioner denies receiving this advice, but in the face of his principled conviction not to act as a "snitch," it is unsurprising that he did not commit it to memory — in that moment, the idea of helping the Government in any form or format was credibly described as "anathema" to Mr. Rivera.  In addition to credibly recounting the cooperation discussions, Mr. Broccoletti's testimony revealed the reasonableness of his decision not to push Petitioner too hard to meet with the Government due to the risk that further urging would undermine the attorney-client relationship by causing Petitioner to question Mr. Broccoletti's loyalty.

In sum, Mr. Broccoletti's credible testimony and Petitioner's related admissions, considered against the backdrop of the case-specific record, readily convince the Court that Petitioner's § 2255 position relies on an overly optimistic vision of the scope of safety valve cooperation and the ability to remain anonymous. More importantly, Petitioner's frustration with the Government and principled unwillingness to inculpate others undermines his claim that Mr. Broccoletti provided ineffective assistance by failing to

explain the somewhat nuanced differences between safety valve cooperation and substantial assistance cooperation. <u>See Arrington</u>, 73 F.3d at 148 ("[Section] § 3553(f) was intended to benefit only those defendants who truly cooperate.").[10]  Rather, in the face of Petitioner's firm rebukes of offers to meet with the Government, it was well-within the range of reasonably competent assistance for Mr. Broccoletti to elect to stop pursuing cooperation <u>in any format</u>.

### 3. Leadership Enhancement

In light of Petitioner's unwillingness to inculpate others in drug trafficking activities, he was categorically ineligible for the safety valve.  This rendered Petitioner's status as a leader largely irrelevant to the safety valve calculus.  Petitioner therefore fails to demonstrate that Mr. Broccoletti was constitutionally deficient for strategically electing to forgo a challenge to this Guideline enhancement and instead focus on securing the minimum sentence authorized by law.[11]  In fact, as

---

[10] Mr. Broccoletti credibly explained that he never discussed the distinction between the two forms of cooperation because: (1) the legal terms can be confusing to non-lawyers; and (2) <u>all roads to a sentence reduction began with a willingness to assist the Government through truthful information — roads that Petitioner forcefully indicated his refusal to travel</u>.

[11] Though the Court does not squarely take the matter up, it notes that Petitioner would have likely faced meaningful hurdles if he had objected to the leadership enhancement.  Petitioner unquestionably recruited an accomplice (Mr. Spears), had a position of power over Spears at work, and Spears testified that Petitioner knew that Spears did not want to sell drugs again (due to a lengthy prior prison term), but he recruited Spears anyway. In fact, Spears testified that Petitioner sent a different subordinate employee at work to help recruit him.  Spears also testified at a prior hearing that he at times performed illegal acts for Petitioner that he did

noted above, Mr. Broccoletti's strategic approach to sentencing was successful as Petitioner received the lowest permissible sentence absent some form of cooperation with the Government.[12]

## IV. CONCLUSION

For the reasons explained above, Petitioner's § 2255 motion is **DENIED** on the merits. ECF No. 142. Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability ("COA") is **DENIED**. 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a COA is denied by this Court, he may seek a COA from the United States Court of Appeals for the Fourth Circuit. Fed. Rule App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a COA from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may

---

not want to perform (selling heroin). Furthermore, when asked whether he ever thought about stopping his illegal conduct, Spears testified: (1) yes, because he never really wanted to sell drugs in the first place and was not making much money; and (2) although he did not think that Petitioner would fire him from his shipyard job if he stopped, Spears questioned whether there would be an attitude or problem if he stopped.

[12] Petitioner's reply brief argues, for the first time, that Mr. Broccoletti should have challenged the leadership enhancement due to potential collateral consequences associated with Bureau of Prisons sentence credits. ECF No. 161, at 8-9. The Court declines to reach the argument that newly appointed counsel raised for the first time in a reply brief and did not revisit at the evidentiary hearing, other than in passing. See Zinner v. Olenych, 108 F. Supp. 3d 369, 398 (E.D. Va. 2015) ("Typically, courts will not consider an argument raised for the first time in a reply brief.").

seek a COA by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                        /s/ M&w
                            _____
                                    Mark S. Davis
                            CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 25 , 2024

21